IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BLACK IRON, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HELM-PACIFIC a/k/a HELM-PACIFIC LEASING, a Nebraska general partnership; FIRST UNION RAIL CORPORATION d/b/a WELLS FARGO RAIL, a North Carolina corporation; CML HOLDINGS, a Delaware corporation; CML METALS CORPORATION, a Utah corporation; MICHAEL W. CONBOY, an individual; DOES 1-15; and ROES 1-15,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Case No. 2:16-cv-00873-JNP-DBP<br><br>District Judge Jill N. Parrish |

Before the court is Plaintiff Black Iron, LLC's Motion to Remand. (Docket No. 21). As explained below, the court grants the Motion and orders that this action be remanded to the Fifth District Court of the State of Utah, Iron County.

## BACKGROUND

This action arises from a complex tangle of contractual litigation surrounding the Comstock Mountain Lion iron mine in Iron County, Utah. Until May 6, 2015, Defendants CML Metals Corporation and CML Holdings Inc. (collectively, the "CML Defendants") owned the mine and surrounding property. The CML Defendants also owned fixtures and other assets related to the mine, including railroad tracks that allowed for transportation of iron ore that was mined and processed on-site. In 2010, 2011 and 2012, the CML Defendants leased a number of railcars from Defendant Helm Pacific to facilitate the transportation of additional iron ore to port

in California. From there, the ore was to be shipped to steel mills in China for refining. The CML Defendants stored the leased railcars on the railroad tracks located on the mine property.

At some point during the lease term, a significant dispute arose between the CML Defendants and Defendant Helm Pacific's successor in interest.[1] The CML Defendants claimed that Defendant Helm Pacific had misrepresented the fitness of the railcars to carry the necessary shipments of iron ore, while the Wells Fargo Defendants claimed that the CML Defendants had failed to pay rent and otherwise abide by the terms of the leases. The dispute broke into open litigation on March 10, 2015, when the CML Defendants initiated a lawsuit (the "CML Lawsuit") against certain of the Wells Fargo Defendants in federal district court, alleging breach of the leases as well as other lease-related claims. (Case No. 2:15-cv-00152-JNP-DBP, Docket Nos. 2, 6). The Wells Fargo Defendants filed numerous counterclaims against the CML Defendants, seeking unpaid rent, repair costs, and return of the railcars under the terms of the lease, as well as other relief. (Case No. 2:15-cv-00152-JNP-DBP, Docket Nos. 12, 13, 33).

During the course of litigation in the CML Lawsuit, the CML Defendants negotiated an asset purchase agreement (the "APA") with Black Iron, LLC, the Plaintiff in the instant suit. Under the APA, Plaintiff agreed to purchase the mine and certain related assets from the CML Defendants, including the railroad tracks where the railcars at issue in the CML Lawsuit were stored. The CML Defendants apparently retained their interest in the railcar leases as well as their interest in the ongoing CML Lawsuit and any other claims against the Wells Fargo Defendants that might arise from the leases. The APA closed on May 6, 2015.

---

[1] After initial issuance of the leases, Defendant Helm Pacific was purchased by Defendant First Union Rail Corporation, which was in turn purchased by Wells Fargo and renamed Wells Fargo Rail Corporation. The court hereinafter refers to Defendants Helm Pacific, First Union Rail Corporation, and Wells Fargo Rail Corporation collectively as the "Wells Fargo Defendants."

Once in possession of the mine, the railroad tracks, and other associated assets, Plaintiff contacted the Wells Fargo Defendants and demanded that the railcars be removed from the property. Plaintiff indicated that if the Wells Fargo Defendants failed to remove the railcars by June 1, 2015, they would be required to pay storage fees. But that deadline came and went with the railcars still on Plaintiff's tracks. The Wells Fargo Defendants did eventually send representatives to evaluate the railcars and prepare them for removal, but the railcars were never removed. Instead, the Wells Fargo Defendants subsequently filed a third-party complaint against Plaintiff in the CML Lawsuit, claiming that the APA was a fraudulent transfer and urging that it be set aside. (Case No. 2:15-cv-00152-JNP-DBP, Docket No. 38).

Approximately one year later, on July 12, 2016, Plaintiff initiated the instant action against the Wells Fargo Defendants, the CML Defendants, and Defendant Conboy in the Fifth District Court of the State of Utah, Iron County. (State Case No. 160500102). In its complaint, Plaintiff alleged several causes of action against the Wells Fargo Defendants relating to the railcars, including trespass, breach of implied contract, and unjust enrichment. (Docket No. 2, at 26–33). Plaintiff's complaint also included what appear to be two claims against the CML Defendants under Utah law—one for indemnity and one for promissory estoppel—captioned under a single heading. (*See id.* at 33–34). In support of these claims, Plaintiff alleged that prior to and following the closing of the APA, the CML Defendants had promised to indemnify Plaintiff "from liability, charges, costs, expenses, or losses associated with [Defendant] First Union and the railroad." (*Id.* at 33).

On August 11, 2016, the Wells Fargo Defendants removed the instant action to this court pursuant to 28 U.S.C. § 1441(a). (Docket No. 2). The removal was premised on diversity jurisdiction under 28 U.S.C. § 1332(a), despite the apparent lack of complete diversity among the

3

parties.² The Wells Fargo Defendants argued in their Notice of Removal that the only nondiverse parties, the CML Defendants, were fraudulently joined to the action to frustrate federal jurisdiction and their citizenship should therefore be ignored when evaluating complete diversity. *See generally Smoot v. Chi., Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881–82 (10th Cir. 1967) (explaining and applying the fraudulent joinder doctrine); *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (same).

On September 12, 2016, Plaintiff filed the instant Motion to Remand, arguing that the CML Defendants were not fraudulently joined and requesting that the court remand the action to state court. (Docket No. 21). The Wells Fargo Defendants filed a memorandum in opposition to Plaintiff's Motion on September 29, 2016, defending their allegation of fraudulent joinder and asserting that Plaintiff simply could not state a claim against the CML Defendants in state court. (Docket No. 30). Plaintiff replied on October 17, 2016. (Docket No. 36). Oral argument was held before the court on December 16, 2016. (Docket No. 51). The court now considers the arguments of the parties pursuant to 28 U.S.C. § 1447 and, as explained below, holds that the action should be remanded to Utah state court.

## DISCUSSION

"A case originally filed in state court may be removed to [this] court if, but only if, 'federal subject-matter jurisdiction would exist over the claim.'" *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1023 (10th Cir. 2012) (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220

---

² The court notes some dispute between the parties as to the citizenship of Defendant Helm Pacific. (*Compare* Docket No. 21, at 9 *with* Docket No. 30, at 12–13). However, the court is able to decide this Motion without resolving that dispute. Accordingly, for purposes of this Motion, the court assumes the citizenship of the parties is as the Wells Fargo Defendants alleged in their Notice of Removal. That document alleged the following jurisdictional facts: Plaintiff is a Utah limited liability corporation consisting of three members who are all citizens of Utah. Collectively, the Wells Fargo Defendants are citizens of North Carolina, Illinois, Delaware, and Nebraska. Defendant CML Holdings is a Delaware corporation with its principal place of business in Utah and Defendant CML Metals Corporation is a Utah corporation with its principal place of business in Utah. Defendant Conboy is a citizen of New York. (Docket No. 2, at 2–4).

(10th Cir. 2011)); *see also* 28 U.S.C. § 1441(a) (allowing removal of an action if "the district courts of the United States have original jurisdiction" over the action); *Sycamore Family LLC v. Earthgrains Baking Cos., Inc.*, No. 2:13-cv-00639-DN, 2013 WL 5883868, at *2 (D. Utah Nov. 1, 2013) (unpublished). When they removed the instant case from Utah state court, the Wells Fargo Defendants asserted that this court may validly exercise diversity jurisdiction under 28 U.S.C. § 1332(a) because the CML Defendants—the only nondiverse parties—were fraudulently joined to the action. (*See* Docket No. 2, at 2–7); *McDonald v. CSAA Ins. Exch.*, No. CIV-16-336-R, 2017 WL 887108, at *1–*2 (W.D. Okla. Mar. 6, 2017) (unpublished) (evaluating a claim of complete diversity based on a theory of fraudulent joinder).

Plaintiff's Motion to Remand pursuant to 28 U.S.C. § 1447 challenges the Wells Fargo Defendants' claim of subject-matter jurisdiction. (Docket No. 21). Plaintiff urges that removal to this court was improper because diversity jurisdiction is lacking, and accordingly requests that the court remand the case to state court. *See* § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over an action removed from state court], the case shall be remanded."). This court may not presume the existence of subject-matter jurisdiction "absent an adequate showing by the party invoking federal jurisdiction." *See Dutcher*, 733 F.3d at 985 (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)). Thus, the Wells Fargo Defendants bear the burden of demonstrating that the basis for federal jurisdiction alleged in their Notice of Removal is sound. *See id.*

### I. Diversity Jurisdiction

As explained above, the Wells Fargo Defendants premised removal on this court's diversity jurisdiction under 28 U.S.C. § 1332(a). "In order to invoke diversity jurisdiction, 'a party must

(10th Cir. 2011)); *see also* 28 U.S.C. § 1441(a) (allowing removal of an action if "the district courts of the United States have original jurisdiction" over the action); *Sycamore Family LLC v. Earthgrains Baking Cos., Inc.*, No. 2:13-cv-00639-DN, 2013 WL 5883868, at *2 (D. Utah Nov. 1, 2013) (unpublished). When they removed the instant case from Utah state court, the Wells Fargo Defendants asserted that this court may validly exercise diversity jurisdiction under 28 U.S.C. § 1332(a) because the CML Defendants—the only nondiverse parties—were fraudulently joined to the action. (*See* Docket No. 2, at 2–7); *McDonald v. CSAA Ins. Exch.*, No. CIV-16-336-R, 2017 WL 887108, at *1–*2 (W.D. Okla. Mar. 6, 2017) (unpublished) (evaluating a claim of complete diversity based on a theory of fraudulent joinder).

Plaintiff's Motion to Remand pursuant to 28 U.S.C. § 1447 challenges the Wells Fargo Defendants' claim of subject-matter jurisdiction. (Docket No. 21). Plaintiff urges that removal to this court was improper because diversity jurisdiction is lacking, and accordingly requests that the court remand the case to state court. *See* § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over an action removed from state court], the case shall be remanded."). This court may not presume the existence of subject-matter jurisdiction "absent an adequate showing by the party invoking federal jurisdiction." *See Dutcher*, 733 F.3d at 985 (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)). Thus, the Wells Fargo Defendants bear the burden of demonstrating that the basis for federal jurisdiction alleged in their Notice of Removal is sound. *See id.*

### I. Diversity Jurisdiction

As explained above, the Wells Fargo Defendants premised removal on this court's diversity jurisdiction under 28 U.S.C. § 1332(a). "In order to invoke diversity jurisdiction, 'a party must

(10th Cir. 2011)); *see also* 28 U.S.C. § 1441(a) (allowing removal of an action if "the district courts of the United States have original jurisdiction" over the action); *Sycamore Family LLC v. Earthgrains Baking Cos., Inc.*, No. 2:13-cv-00639-DN, 2013 WL 5883868, at *2 (D. Utah Nov. 1, 2013) (unpublished). When they removed the instant case from Utah state court, the Wells Fargo Defendants asserted that this court may validly exercise diversity jurisdiction under 28 U.S.C. § 1332(a) because the CML Defendants—the only nondiverse parties—were fraudulently joined to the action. (*See* Docket No. 2, at 2–7); *McDonald v. CSAA Ins. Exch.*, No. CIV-16-336-R, 2017 WL 887108, at *1–*2 (W.D. Okla. Mar. 6, 2017) (unpublished) (evaluating a claim of complete diversity based on a theory of fraudulent joinder).

Plaintiff's Motion to Remand pursuant to 28 U.S.C. § 1447 challenges the Wells Fargo Defendants' claim of subject-matter jurisdiction. (Docket No. 21). Plaintiff urges that removal to this court was improper because diversity jurisdiction is lacking, and accordingly requests that the court remand the case to state court. *See* § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over an action removed from state court], the case shall be remanded."). This court may not presume the existence of subject-matter jurisdiction "absent an adequate showing by the party invoking federal jurisdiction." *See Dutcher*, 733 F.3d at 985 (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)). Thus, the Wells Fargo Defendants bear the burden of demonstrating that the basis for federal jurisdiction alleged in their Notice of Removal is sound. *See id.*

### I. Diversity Jurisdiction

As explained above, the Wells Fargo Defendants premised removal on this court's diversity jurisdiction under 28 U.S.C. § 1332(a). "In order to invoke diversity jurisdiction, 'a party must

show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000.'"[3] *Dutcher*, 733 F.3d at 987 (quoting *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006)); *see also* 28 U.S.C. § 1332(a). The parties in this action agree that the amount in controversy exceeds the statutory threshold, but differ as to the existence of complete diversity of citizenship among the parties. Viewing the face of the complaint, it is clear that the named parties are not completely diverse because Plaintiff and the CML Defendants are all citizens of Utah. *See Ravenswood Inv. Co., L.P. v. Avalon Correctional Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011) ("When jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332(a), . . . each plaintiff must be diverse from each defendant to have what is known as complete diversity."). Nevertheless, the Wells Fargo Defendants assert that complete diversity exists because Plaintiff's inclusion of the CML Defendants in this action constitutes a "fraudulent joinder" of non-diverse parties meant to defeat this court's jurisdiction.

## II. Fraudulent Joinder Standard

The joinder of a nondiverse party is "fraudulent" when it serves no purpose other than "to frustrate federal jurisdiction."[4] *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). The citizenship of fraudulently joined defendants "should be ignored for the purposes of assessing complete diversity." *See Dutcher*, 733 F.3d at 987–88. Thus, "fraudulent joinder" is "an exception to the requirement of complete diversity." *Sycamore Family*, 2013 WL 5883868, at *2. "The doctrine 'effectively permits a district court to disregard, for jurisdictional purposes, the

---

[3] Additionally, the right of removal is held jointly by all defendants, meaning there must be unanimous consent to removal among properly joined and served defendants. 28 U.S.C. § 1446(b)(2)(A). Nevertheless, "nominal, unknown, unserved, or fraudulently joined defendants" need not consent to removal. *See McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1342 (D. Kan. 1997). Thus, the consent of all Defendants in this case is required only if the CML Defendants were "properly joined." *See* § 1446(b)(2)(A).

[4] Importantly, "[f]raudulent joinder is a term of art, which does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the [nondiverse] defendant." *City of Neodesha v. BP Corp. N. Amer. Inc.*, 355 F. Supp. 2d 1182, 1187 (D. Kan. 2005).

citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Purdy v. Starko, Inc.*, No. 1:10-cv-00042-DAK, 2010 WL 3069850, at *2 (D. Utah Aug. 4, 2010) (unpublished) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461–62 (4th Cir. 1999)).

In evaluating a claim of fraudulent joinder, "all doubts are to be resolved against removal."[5] *Warner v. CitiMortgage, Inc.*, 533 F. App'x 813, 816 (10th Cir. 2013) (unpublished) (alterations omitted) (quoting *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982)). More precisely, the removing party "bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *See Dutcher*, 733 F.3d at 988 (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). The party defending removal may carry this "heavy burden" by demonstrating "either: (1) actual fraud in the pleading of jurisdictional facts, or (2) [the] inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)). Because fraudulent joinder analysis is ultimately "a jurisdictional inquiry," *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242,

---

[5] There has been some suggestion that the Tenth Circuit's presumption against removal and in favor of remand has been weakened by intervening Supreme Court pronouncements, particularly where the presumption was based on the somewhat dated reasoning in *Shamrock Oil & Gas, Corp. v. Sheets*, 313 U.S. 100 (1941). *See, e.g.*, *Bruning v. City of Guthrie*, 101 F. Supp. 3d 1142, 1145–46 (W.D. Okla. 2015). As far as this court is aware, the presumption is untouched where the basis of federal court jurisdiction is not obvious on the face of the complaint. *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697–98 (2003) (explaining that *Shamrock Oil*'s reasoning is "qualified" where "the subject matter of an action qualifies it for removal"). Moreover, the Supreme Court appears to have directly rejected a presumption against removal only insofar as it might apply to cases involving the Class Action Fairness Act of 2005. *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 554 (2014) ("We need not here decide whether . . . a presumption [against removal] is proper in mine-run diversity cases. It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."); *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 356 (7th Cir. 2017) ("[T]here is not a whisper in *Dart Cherokee* of any move to overrule *Shamrock Oil*. If that is where the Supreme Court is going, it will have to get there on its own; it is not for us to anticipate such a move."). Moreover, this court places great trust in the Tenth Circuit's continued reliance on the presumption in recent removal cases. *See, e.g.*, *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014); *Haik v. Salt Lake Cty. Bd. of Health*, 604 F. App'x 659, 662 (10th Cir. 2015) (unpublished); *Anderson v. Lehman Bros. Bank, FSB*, 528 F. App'x 793, 795 (10th Cir. 2013) (unpublished); *Brazell v. Waite*, 525 F. App'x 878, 881(10th Cir. 2013) (unpublished).

1247 (10th Cir. 2004), this court may "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," *see Dodd*, 329 F.2d at 85 (citations omitted); *McDaniel v. Loya*, 304 F.R.D. 617, 627 (D.N.M. 2015).

The Wells Fargo Defendants do not allege actual fraud in the pleading of jurisdictional facts—instead, they assert that Plaintiff cannot establish a cause of action in state court against the CML Defendants. In evaluating this assertion, the court is mindful that "[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992). Likewise, "the federal court will [not] pre-try . . . doubtful issues of fact to determine removability; the issue [of fraudulent joinder] must be capable of summary determination and be proven with complete certainty." *Dodd*, 329 F.2d at 85; *Brazell*, 525 F. App'x at 881 ("The objective [of fraudulent joinder analysis] is not to pre-try the merits of the plaintiff's claims."). Ultimately, as the party asserting fraudulent joinder, the Wells Fargo Defendants must establish that Plaintiff has "no cause of action" against the CML Defendants. *See Dodd*, 329 F.2d at 85; *Brazell*, 525 F. App'x at 881. Stated differently, the Wells Fargo Defendants must firmly establish that "there is no possibility that [Plaintiff] will recover against" the CML Defendants in state court.[6] *McDaniel*, 304 F.R.D. at 630. Thus, this standard

---

[6] Other district courts have noted some inconsistency in the Tenth Circuit's articulation of the fraudulent joinder standard. *See, e.g.*, *McDaniel v. Loya*, 304 F.R.D. 617, 628–31 (D.N.M. 2015); *Zufelt v. Isuzu Motors Am., L.C.C.*, 727 F. Supp. 2d 1117, 1122–25 (D.N.M. 2009). For example, in *Montano v. Allstate Indemnity Co.*, the Tenth Circuit appeared to adopt a standard that required the removing party to establish that there was "no possibility of recovery" against a nondiverse party. 211 F.3d 1278 (Tbl.), 2000 WL 525592, at *1–*2, *4 (10th Cir. 2000) (unpublished). By contrast, in *Nerad v. AstraZeneca Pharmaceuticals, Inc.*, the Tenth Circuit stated the standard as follows:

> [In evaluating a claim of fraudulent joinder,] the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant. A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law.

203 F. App'x at 913 (internal citation omitted) (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393 (5th Cir. 2000)). The Fifth Circuit has identified a similar strain of inconsistency: "Neither our circuit nor other circuits have

"is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6)." *Montano*, 211 F.3d 1278, 2000 WL 525592, at *2. Indeed, "remand is required if any one of the claims against the non-diverse defendant . . . is *possibly* viable." *Id.* (emphasis added) (citing *Green v. Amerada Hess Corp.*, 707 F.2d 201, 207 (5th Cir. 1983)); *see also Sanders v. DJO, LLC*, 728 F. Supp. 2d 1200, 1203 (D.N.M. 2010) ("Under [the fraudulent joinder] standard, it is entirely possible a case should be remanded even though the claims brought against the non-diverse defendant will ultimately be subject to dismissal." (citation omitted)); *Bear River Mut. Ins. Co. v. Intermountain Claims, Inc.*, No. 2:16-cv-1034-TS, 2016 WL 6746458, at *3 (D. Utah Nov. 15, 2016) (unpublished) ("[E]ven if Plaintiff fails to state a claim against Defendant . . . , remand is still required.").

The Tenth Circuit's most recent published opinion evaluating a claim of fraudulent joinder, *Dutcher v. Matheson*, 733 F.3d 980 (10th Cir. 2013), illustrates the "heavy burden" that the Wells Fargo Defendants must carry to demonstrate fraudulent joinder, *id.* at 988. Like the instant case, *Dutcher* involved an action removed from state court to the federal district court on the basis of

---

been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). The Fifth Circuit identified both the "no possibility" standard and the "reasonable basis" standard and posited that the tests, though apparently dissimilar, must be ultimately reconcilable. *See id.* In *Smallwood v. Illinois Central R.R. Co.*, the Fifth Circuit finally made the predicted reconciliation, rejecting all other formulations of the test:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

385 F.3d 568, 573 (5th Cir. 2004). As explained in *McDaniel*, the Tenth Circuit has consistently relied on the Fifth Circuit's reasoning when analyzing fraudulent joinder. 304 F.R.D. at 630. Moreover, the Tenth Circuit has recently articulated formulations of the standard that are substantially similar to the Fifth Circuit's reconciled formulation. Recent Tenth Circuit cases have explained that the "removing party must show that the plaintiff has '*no cause of action*' against the fraudulently joined defendant," *Brazell*, 2013 WL 2398893, at *3 (emphasis added), and that a finding of fraudulent joinder depends on the "*inability* of the plaintiff to establish a cause of action against the non-diverse party in state court[,]" *Dutcher*, 733 F.3d at 988 (emphasis added) (citing *Cuevas*, 648 F.3d at 249). This court concludes that these recent formulations of the standard accord most closely with the "no possibility" standard outlined by the Fifth Circuit above. *See McDaniel*, 304 F.R.D. at 630. Accordingly, the court will apply the "no possibility" standard to Defendants' claims of fraudulent joinder.

9

diversity jurisdiction despite the presence of nondiverse defendants. The plaintiff, a nonclient, had alleged certain torts against several attorney defendants before removal, as well as multiple claims against other defendants. While the bulk of defendants were non-residents, complete diversity was lacking because the plaintiff and the attorney defendants were residents of Utah. In removing the action, the non-resident defendants argued that the federal district court could nonetheless exercise diversity jurisdiction because the attorney defendants were fraudulently joined "and should be ignored for the purposes of assessing complete diversity." *Id.* at 988. Specifically, the removing defendants argued, and the district court agreed, that the plaintiff could not state a cause of action against the nondiverse attorney defendants because Utah law categorically prohibited actions against attorneys by a non-client in the absence of fraud, collusion, or privity of contract, which were not alleged. Based on this reading of Utah law, the district court found that any claim against the attorney defendants by the non-client plaintiff would fail as a matter of law. Concluding that the attorney defendants were therefore fraudulently joined, the district court concluded it could ignore their nondiverse citizenship and exercise diversity jurisdiction over the remaining claims. *Id.*

On appeal, the Tenth Circuit disagreed, finding that Utah law "does not support the [removing defendants'] broad proposition regarding the immunity of counsel when acting as agent for their clients." *Id.* at 989. Because Utah law did not categorically prohibit actions by non-clients against attorneys, the appellate court could not hold that the nonclient plaintiffs' claim against the attorney defendants constituted fraudulent joinder. The court explained that this conclusion was not dependent on whether the plaintiff had in fact stated a claim against the attorney defendants under Utah law or even whether the attorney defendants were "somehow fraudulently joined." *Id.* Instead, the court emphasized that the removing defendants "needed to

clear a high hurdle to prove something they have yet to prove, i.e. fraudulent joinder." *Id.* Because the removing party failed to demonstrate that the plaintiff's "inability to establish a cause of action against the nondiverse part[ies] in state court," *id.* at 988, the court concluded that diversity jurisdiction was lacking, *id.* at 989.

### III.  The Wells Fargo Defendants' Claim of Fraudulent Joinder

Here, much like the removing party in *Dutcher*, the Wells Fargo Defendants argue that the CML Defendants' citizenship should be ignored when assessing complete diversity because Plaintiff has no viable cause of action against the CML Defendants under Utah law. When filed in state court, Plaintiff's complaint alleged a cause of action against the CML Defendants and Defendant Conboy, which was labeled "Promissory Estoppel/Indemnity." (Docket No. 2, at 33). The associated allegations read as follows:

> 83. Black Iron incorporates and alleges all prior paragraphs.
> 84. On April 2, 2015, Black Iron executed a note in favor of Conboy ("Note").
> 85. The amount of the Note is $2,902,900.06.
> 86. Black Iron executed the Note and the Asset Purchase Agreement in reliance on the promise from CML to indemnify Black Iron by retaining claims between CML and First Union.
> 87. Before and after execution of the Asset Purchase Agreement and the Note, Conboy promised to retain claims and indemnify Black Iron from liability, charges, costs, expenses, or losses associated with First Union and the railroad.
> 88. Upon information and belief, when Conboy made his promises to Black Iron, he may have been acting individually or on behalf of CML and/or the instance of its officers and directors.
> 89. Conboy, CML and ROES 1-15 are equitably bound to resolve all matters relating to the storage and removal of the railcars and locomotives.
> 90. Black Iron has expended money for security and safekeeping of the railcars.
> 91. Black Iron is also incurring expenses to proceed with this action to have the railcars and locomotives removed.
> 92. Despite demands from Black Iron, Conboy[,] CML[,] and ROES 1-15 have failed to fulfill their obligations to Black Iron.
> 93 Since CML and Fist Union are in litigation and Black Iron is suffering losses, as a result of First Union's railcars and locomotives being stored on Black Iron's tracks, Black Iron is suffering damages because it is not receiving storage payments from First Union and cannot operate the mine, use its tracks, or otherwise conduct business.

(*Id.* at 33–34).

The Wells Fargo Defendants insist that these allegations fail to state a claim under Fed. R. Civ. P. 8 for either indemnity or promissory estoppel as a matter of law. (Docket No. 30, at 5–10, 12). Plaintiff responds that its complaint, originally filed in Utah state court, should be evaluated under the less-demanding standard of Utah R. Civ. P. 8(a), rather than the more stringent Fed. R. Civ. P. 8. (Docket Nos. 21, at 9; 36, at 5). Both arguments miss the mark.

When evaluating a claim of fraudulent joinder, the standard employed is at once "more exacting" for the removing party and more forgiving to the party opposing removal than a motion under Rule 12(b)(6). *See Montano*, 211 F.3d 1278 (Tbl.), 2000 WL 525592, at *2; *Ferrell v. BGF Global, LLC*, No. CIV-15-404-D, 2015 WL 6438988 at *2 (W.D. Okla. Oct. 2, 2015) (unpublished) ("[T]he fraudulent joinder standard is more favorable to the plaintiff than the standard for ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)"). Indeed, the proper inquiry is not so much whether the party opposing removal *has* stated a viable claim against a nondiverse party in its complaint, but whether it *can* state a viable claim on the available facts and circumstances of the case. *See Dutcher*, 733 F.3d at 988 ("To establish fraudulent joinder, the removing party must demonstrate . . . [the] *inability* of the plaintiff to establish a cause of action against the non-diverse party in state court." (alterations omitted and emphasis added)); *id.* at 989 (finding no fraudulent joinder, but explaining that such a finding "does not mean that the plaintiffs have stated a valid claim"); *Dodd*, 329 F.2d at 85 ("[J]oinder is . . . fraudulent if in fact *no cause of action exists*." (emphasis added)). Accordingly, this court is not confined to the complaint, but is entitled to "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Id.* (internal citations

omitted). And, in so doing, this court is satisfied that there is at least *some* possibility that Plaintiff can state a claim against the CML Defendants in Utah state court.

Specifically, the court is persuaded that Plaintiff may be able to establish a cause of action against the CML Defendants for breach of an oral agreement of indemnity. In Utah, as elsewhere, an agreement need not be committed to paper in order to be binding: "It is a basic and long-established principle of contract law that agreements are enforceable even though there is neither a written memorialization of that agreement nor the signatures of the parties, unless specifically required by the statute of frauds." *Goodmansen v. Liberty Vending Sys.*, 866 P.2d 581, 585 (Utah Ct. App. 1993) (quoting *Murray v. State*, 737 P.2d 1000, 1001 (Utah 1987)). Put simply, "a binding contract exists where it can be shown that the parties had a meeting of the minds as to the 'integral features of [the] agreement' and that the terms are sufficiently definite as to be capable of being enforced." *LD III, LLC v. BBRD, LC*, 221 P.3d 867, 872 (Utah Ct. App. 2009) (alteration in original) (quoting *Prince, Yeates & Geldzahler v. Young*, 94 P.3d 179, 183 (Utah 2004)).

Here, Plaintiff has alleged that the CML Defendants orally agreed to "indemnify Black Iron from liability, charges, costs, expenses, or losses associated with [Defendant] First Union and the railroad," (Docket No. 2, at 33), at least once during negotiations regarding the APA in the spring of 2015 and perhaps twice after the execution of the APA in the summer and early fall of 2015, (Docket No. 22, at 2). Plaintiff has also alleged that this "hold harmless" agreement was reached separately from the purchase of the mine and other assets because the railcar leases and associated claims were retained by the CML Defendants under the APA. (*Id.*). This basis of liability is both legally and factually plausible based on the information currently before the court.

Still, the Wells Fargo Defendants insist that any separate agreement of indemnity must fail as a matter of law. They argue that the alleged agreement is fatally deficient in at least three ways[7]: First, the alleged agreement cannot be separated from the APA; second, the indemnity agreement fails for lack of consideration; and, third, the terms of the alleged agreement are so indefinite as to be unenforceable. As explained below, the court rejects each argument.

First, the Wells Fargo Defendants argue that any alleged oral agreement cannot be divorced from the APA and therefore fails because it conflicts with that agreement. They reason that the CML Defendants expressly retained any claims against the Wells Fargo Defendants related to the railcars in the APA, and, therefore, any indemnification agreement relating to those claims would need to be memorialized in the APA. This argument is plainly unavailing. Under the express terms of the APA, Plaintiff did not purchase the CML Defendants' claims regarding the railcars and did not assume any liabilities associated with the railcar leases. (Docket No. 10-2, at 1–2, 30–31). Thus, the APA memorialized a clearly delineated agreement to purchase only the mine property and certain other related assets—the legal effect of that agreement cannot somehow encompass assets or liabilities that were specifically *excluded* from the agreement. In short, the court fails to see how Plaintiff's purchase of certain assets and assumption of certain liabilities would preclude it from making a separate agreement regarding assets it did not purchase and liabilities it did not assume. Thus, the alleged agreement would not fail for this reason.

---

[7] In support of removal, the Wells Fargo Defendants seemed to argue that any claims Plaintiff might have against the CML Defendants were compulsory counterclaims that should have been brought as part of the CML Lawsuit. (Docket No. 2, at 6–7). The court need not decide that issue, however, since Wells Fargo Defendants have conceded that the compulsory counterclaim argument was not raised as a basis for removal, but as "evidence that Black Iron's initiation of this case in State Court, and the fraudulent joinder of the CML Defendants, was improper, at a minimum." (Docket No. 30, at 14). Since the propriety of Plaintiff's suit or its joinder of the CML Defendants to the suit is irrelevant to the fraudulent joinder analysis, the court need not address this argument further.

The Wells Fargo Defendants next argue that any separate agreement cannot "survive on its own merits" because Plaintiff has not alleged any consideration it gave in exchange for a promise of indemnity. (Docket No. 30, at 10). The Wells Fargo Defendants seem to take issue with Plaintiff's suggestion that the promissory note executed in favor of Defendant Conboy was somehow consideration for the CML Defendants' promises of indemnity. They argue that the note could not serve as consideration for a *separate* agreement because it was listed as one of the assumed liabilities under the APA and was specifically attached to that agreement. While this argument is certainly credible, whether or not the note can serve as consideration for a separate agreement is ultimately irrelevant because the note is not the only legal detriment alleged by Plaintiff. The term for the railcar leases apparently did not expire until several months after Plaintiff took ownership of the tracks where the railcars were stored.[8] In that intervening period and beyond, Plaintiff alleges that it has "expended money for security and safekeeping of the railcars" while they are stored on its tracks. (Docket No. 2, at 33). Plaintiff also alleges that storing the railcars prevents it from storing the railcars of other paying customers or otherwise operating the mine. Moreover, Plaintiff is allegedly "incurring expenses to . . . have the railcars and locomotives removed" and returned to the Wells Fargo Defendants. (*Id.* at 33–34). These legal detriments—i.e., expenses for safekeeping, proper storage, and return of the railcars to the lessor—appear to be the legal responsibility of the CML Defendants as lessees under the railcar leases. (*See, e.g.*, Case No. 2:15-cv-00152-JNP-DBP, Docket No. 12-1, at 2, 3–5 (requiring that

---

[8] A provision of the railcar leases appears to indicate that the sale or transfer of "all or a substantial part" of the CML Defendants' assets would be considered a default under the lease. But even if the APA triggered a default, it is not clear that such a default immediately terminated the leases. (*See* No. 2:15-cv-00152-JNP-DBP, Docket No. 6-1, at 5 (providing a series of alternate remedies including court actions to enforce the lease, termination of the lease, return of railcars at lessee's expense, etc.)). Moreover, even in the event of a lease termination, the CML Defendants were still required to return each railcar "in as good condition, order and repair as when delivered" at the beginning of the lease term. (No. 2:15-cv-00152-JNP-DBP, Docket No. 6-1, at 3). Thus, it appears that the CML Defendants were still legally obligated to properly store, preserve, protect, and eventually return the railcars.

the lessee assume any risk of "damage, theft, taking, destruction," etc., and that the lessee return the railcars to the lessor upon expiration of the lease "in as good condition, order and repair as when delivered to Lessee")). Thus, Plaintiff has essentially assumed many of the expenses associated with the railcar leases that would otherwise fall to the CML Defendants as the responsible lessees. That Plaintiff would incur such expenses in anticipation of indemnification by the CML Defendants is an entirely reasonable reading of the facts as they stand. The court therefore rejects the Wells Fargo Defendants' assertion that the alleged indemnity agreement would necessarily fail for lack of consideration.

Finally, the Wells Fargo Defendants argue that any separate agreement would be "unenforceably vague." (Docket No. 30, at 10). Again, the court must disagree. As the Wells Fargo Defendants suggest, "[a] condition precedent to the enforcement of any contract is that there be a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness to be enforced." *Young*, 94 P.3d at 184 (alteration in original) (quoting *Valcare v. Bitters*, 362 P.2d 427, 428 (Utah 1961)). In other words, "[t]he court must be able to enforce the contract according to the parties' intentions; if those intentions are impenetrable, or never actually existed, there can be no contract to enforce." *Nielsen v. Gold's Gym*, 78 P.3d 600, 602 (Utah 2003). However, beyond the bare assertion that the alleged indemnity agreement was fatally indefinite, the Wells Fargo Defendants have failed to demonstrate that the agreement is in fact unenforceable.

First, there is no definite indication that Plaintiff cannot supplement the allegations in its complaint with additional facts regarding the contours of the agreement. In fact, the Gilbert Affidavit submitted with the instant Motion suggests that there were multiple conversations

between Plaintiff's representative and Defendant Conboy regarding the alleged agreement.[9] (Docket No. 22, at 2). Apparently, the full content of these conversations has not been fully explored by the parties and is not currently before the court. Since discussion of more definite terms in the course of these conversations is well within the realm of possibility, the court cannot hold that the agreement was incurably vague or otherwise unenforceable as a matter of law.

Further, the court is not convinced that the terms of the alleged indemnity agreement are so indefinite as to be utterly unenforceable. Plaintiff alleges that the CML Defendants agreed to pay for *any* "liability, charges, costs, expenses, or losses associated with [Defendant] First Union and the railroad." (Docket No. 2, at 33). In essence, the CML Defendants allegedly agreed to retain financial responsibility for the railcars they left behind and to pay any expense that Plaintiff might incur as a result of the railcars' continued presence on Plaintiff's property. Though quite broad, such an obligation is not patently unenforceable; Plaintiff's countervailing obligation under the agreement is easily inferred. Put simply, there would be no need for any indemnification unless Plaintiff was to store the railcars on its newly acquired tracks, expend money to remove the railcars, or otherwise incur expenses relating to the railcars. Such obligations flow naturally from the factual scenario present in this case—one where the CML Defendants transferred land to Plaintiff, but retained their interest in leased property that remained on the land after the transfer and was subject to ongoing litigation. Discovery regarding the conversations between Plaintiff's representative and Defendant Conboy may or may not bring these terms into sharper relief, but the basic contours of the agreement are sufficiently

---

[9] The Wells Fargo Defendants urge this court to ignore the Gilbert Affidavit because it was filed one day after the filing deadline imposed on certain remand motions under 28 U.S.C. § 1447(c). Instead, the court concludes that the Gilbert Affidavit is timely. As an initial matter, it is not clear from the statutory language that this deadline applies to any document other than the remand motion itself. In any event, the filing deadline does not apply to a remand motion that is based on a lack of subject matter jurisdiction. § 1447(c). As the instant Motion clearly asserts a lack of subject matter jurisdiction, the filing deadline is inapplicable.

apparent to satisfy this court that recovery on a theory of indemnity is neither factually nor legally impossible. *Montano*, 211 F.3d 1278 (Table), 2000 WL 525592, at *1–*2 (removing party "must demonstrate that there is no possibility" that plaintiff could establish a cause of action in state court); *Hernandez v. Liberty Ins. Corp.*, 73 F. Supp. 3d 1332, 1336 (W.D. Okla. 2014) ("The non-liability of the defendants alleged to be fraudulently joined must be established with 'complete certainty.'" (quoting *Smoot*, 378 F.2d at 882)).

In sum, the court cannot conclude that Plaintiff has "no cause of action" against the CML Defendants under Utah law. *See Dodd*, 329 F.2d at 85; *Brazell*, 525 F. App'x at 881. Whether or not Plaintiff is *likely* to recover against the CML Defendants in state court is not for this court to decide.[10] In the end, even a thin reed is enough to support a remand: "[T]here need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999).

## CONCLUSION

Based on the foregoing, this court concludes that the Wells Fargo Defendants have not met the exacting standard for demonstrating fraudulent joinder. Because the Wells Fargo Defendants have not carried their burden to demonstrate that the CML Defendants were fraudulently joined, the citizenship of the CML Defendants must be considered in assessing the presence of complete diversity. As citizens of Utah, the CML Defendants' presence in this case

---

[10] The court acknowledges that the Fifth Circuit has indicated that "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood*, 385 F.3d at 573 n.9. While the court agrees with this principle to the extent that it aligns with Tenth Circuit law, the court believes that the possibility of recovery here is more than merely theoretical. As explained in the above analysis, the factual scenario in this case is sufficient to establish a "reasonable basis . . . to predict that the plaintiff *might* be able to recover against [the] in-state defendant." *See id.* (emphasis added). In sum, the court finds that Wells Fargo Defendants have failed to carry their "heavy burden" to establish fraudulent joinder in this instance. *See Dutcher*, 733 F.3d at 988.

spoils complete diversity and eliminates this court's jurisdiction over the instant action. The case must be remanded to state court where it was originally filed.

Plaintiff's Motion (Docket No. 21) is **GRANTED** and the above-captioned action is hereby **REMANDED** to state court. The Clerk of Court is **ORDERED** to transfer this action to the Fifth District Court of the State of Utah, Iron County, Cedar City District Court for further proceedings and to close this docket.

IT IS SO ORDERED.

Signed this 16th day of June, 2017,

BY THE COURT:

_____
Jill N. Parrish
United States District Court Judge